UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

SUSAN JOAN MATTHEWS and
KEVIN J. PASTERNAK,

Plaintiffs,

v.                                                    Case No. 6:25-cv-143-JA-RMN

SANFORD, SANFORD HEALTH,
and THE EVANGELICAL
LUTHERAN GOOD SAMARITAN
SOCIETY,

Defendants.

## ORDER

This case is before the Court on the motion for summary judgment (Doc. 42) filed by Defendants, Sanford, Sanford Health, and The Evangelical Lutheran Good Samaritan Society (Evangelical Lutheran).[1] Plaintiffs filed a response (Doc. 52), to which Defendants filed a reply (Doc. 58). Based on the Court's review of the parties' submissions, the motion must be denied.

## I.   BACKGROUND

Good Samaritan Kissimmee Village (Good Samaritan) is a fifty-five-and-older residential community near Kissimmee, Florida, that features a series of

---

[1] The motion for summary judgment was filed by all three Defendants. However, Plaintiffs' claims against Sanford and Sanford Health have been dismissed by stipulation of the parties. (Doc. 65). Accordingly, the motion remains pending only as it pertains to Evangelical Lutheran.

residential and healthcare structures, including quadruplex apartment buildings that are leased to tenants on a month-to-month basis. (Doc. 41-6 ¶ 3; Doc. 46-1 at 15–16). Plaintiffs, Susan Matthews and Kevin Pasternak, were tenants at Good Samaritan who intended to live out the remainder of their lives in an apartment at the community. (Doc. 46-1 at 25:16–23; Doc. 41-1 at 118–45). However, Hurricane Ian caused severe flooding at Good Samaritan in 2022, which destroyed many of Plaintiffs' personal possessions. (*See* Doc. 41-1 at 192–93). The instant case is one of twenty-six cases filed in state or federal court arising from the 2022 flooding episode at Good Samaritan. (*See* Doc. 43).[2]

Most of the Good Samaritan campus is located in the natural floodplain of Shingle Creek and within a Federal Emergency Management Agency (FEMA)-designated special flood hazard area. (Doc. 46-1 at 14; Doc. 51-2 at 4, 6, 10). There are multiple recorded flooding events in the time since Evangelical Lutheran purchased Good Samaritan in 1979. (Doc. 53-10 at 12; Doc. 41-3 at 27:13–25:5). These events include: (1) a 1987 flooding event, (Doc. 53-10 at 11); (2) impacts from the 2004 hurricane season, which caused approximately $15 million in flood-related damage at Good Samaritan, (*id.* at 12; Doc. 46-2 at 66:13–69:10, 135:6–16); and (3) significant flood damage in 2017 from Hurricane

---

[2] The motion (Doc. 43) requesting judicial notice of these related cases is granted. The Court takes judicial notice of the existence of these cases but not the truth of any matters asserted therein, in accordance with *United States v. Jones*, 29 F. 3d 1549, 1553 (11th Cir. 1994), and Federal Rule of Evidence 201(b).

Irma that was purportedly exacerbated by a critical failure of the property's wastewater treatment facility, which contaminated the floodwater with biological toxins, (Doc. 46-2 at 100:3–5, 102:7–10). The Irma flooding and resulting contamination caused between 35 and 40 million dollars in damage to Good Samaritan. (Doc. 53-10 at 12). In addition to these prominent flooding episodes, the property is known to experience minor flooding in the northeast corner of the campus every year. (*Id.* at 11).

In September 2022, Good Samaritan required Plaintiffs to evacuate the premises before Hurricane Ian made landfall. (Doc. 41-1 at 29:18–20). Before evacuating to a nearby motel, Plaintiffs prepared their unit at Good Samaritan for the storm by placing sandbags at the doors and locking the windows. (*Id.* at 30:6–11). But Plaintiffs only took a few personal items with them because they thought they would return home shortly after the storm ended. (*Id.* at 30:6–21; Doc. 41-2 at 30:5–10). The day after the storm, Plaintiffs attempted to return to their unit at Good Samaritan. (Doc. 41-2 at 30:15–20). However, Good Samaritan officials denied Plaintiffs access to the Good Samaritan campus every day for three weeks because of contaminated standing floodwater on the property. (Doc. 41-1 at 31:3–34:24, 37:5–8).

When Good Samaritan eventually admitted Plaintiffs to the campus, Plaintiffs observed excrement and toilet paper in the standing floodwater near their apartment. (*Id.* at 49:19–25). Mr. Pasternak attempted to wade through

3

neck-deep water to reach the apartment but was forced to turn back. (Doc. 41-2 at 34:3–11, 45:17–23). When Mr. Pasternak managed to get to the apartment a few days later, he observed evidence that the waterline had been at least three feet high inside the unit. (*Id.* at 45:1–13). Raw sewage had infiltrated the apartment, and mushrooms were beginning to colonize the carpets and furniture. (*Id.* at 36:23–37:6; Doc. 41-1 at 51:15–20). Ms. Matthews used a hazmat suit when she returned to the apartment, where she observed dead bugs and remnants of toilet paper. (Doc. 41-1 at 50:6–7, 54:6–14). Good Samaritan workers informed Plaintiffs that they could not remove any of their belongings from the apartment due to the contamination. (Doc. 41-2 at 48:5–20). Nevertheless, Ms. Matthews removed some clothing, which she stated later "disintegrated" in the washing machine. (Doc. 41-1 at 65:8–12).

Plaintiffs allege that $140,702 in personal property was destroyed in their apartment. (*See id.* at 192–93). These items include a custom-built golf cart, sports memorabilia, electronics, and specialty tools. (*Id.*; Doc. 41-2 at 55:7–59:25). Plaintiffs allege that Evangelical Lutheran's failure to make necessary repairs to the Good Samaritan campus after Irma and to provide adequate warnings to new tenants about the recent history of flooding at Good Samaritan led to the destruction of their property during Hurricane Ian. (Doc. 30 ¶ 20). At the time they signed the lease, Plaintiffs were unaware of the property's location

4

within a floodplain or its history of flooding and would not have signed the lease had that history been disclosed to them. (Doc. 41-2 at 23:14–15).

Plaintiffs bring two counts against Evangelical Lutheran—for negligence (Count I) and negligent failure to warn (Count II). (*See* Doc. 30). Evangelical Lutheran moves for summary judgment, arguing that: (1) Plaintiffs' claims are barred by an exculpatory clause in the lease; and (2) Plaintiffs cannot establish that Evangelical Lutheran owed Plaintiffs a legal duty. (Doc. 42).

## II.   LEGAL STANDARDS

On a motion for summary judgment, a district court views "all facts and reasonable inferences in the light most favorable to the nonmoving party." *Wesson v. Huntsman Corp.*, 206 F.3d 1150, 1152 (11th Cir. 2000). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is "genuine" only if "a reasonable jury could return a verdict for the nonmoving party," and a fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The movant "bears the initial responsibility of informing the district court of the basis for its motion" and "identifying those portions" of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant demonstrates the

5

absence of a genuine issue of material fact, "[t]he burden then shifts to the non[]moving party" to "present affirmative evidence to show that a genuine issue of material fact exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006). To defeat the motion, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## III.   DISCUSSION

### A.   Exculpatory Clause

Plaintiffs' lease contains the following clause:

> VI. RIGHTS AND RESPONSIBILITIES OF [Good Samaritan]
> A. [Good Samaritan] is not liable for loss or damage by fire, theft, or other casualty, nor injuries from the use of the UNIT to RESIDENT, personal possessions, family, or any guest or invitee of RESIDENT. Any insurance necessary or desired by RESIDENT shall be at RESIDENT'S expense.

(Doc. 41-1 at 123). Evangelical Lutheran argues that application of this clause bars Plaintiffs' negligence claims. (Doc. 42 at 5–7). Plaintiffs argue that the exculpatory clause is void under Florida law. (Doc. 52 at 9–10).

"[E]xculpatory contracts are, by public policy, disfavored in the law because they relieve one party of the obligation to use due care." *Sanislo v. Give Kids the World, Inc.*, 157 So. 3d 256, 271 (Fla. 2015) (citing *Applegate v. Cable Water Ski, L.C.*, 974 So. 2d 1112, 1114 (Fla. 5th DCA 2008)). Nevertheless, "Florida courts have upheld the enforceability of exculpatory provisions in

contracts when the language of the provisions clearly and unambiguously communicates the scope and nature of the waiver." *Pillay v. Pub. Storage, Inc.*, 284 So. 3d 566, 569 (Fla. 4th DCA 2019) (collecting cases).[3] Although disfavored, exculpatory clauses may lawfully be included in residential lease agreements. *See Casasanta v. Sailshare 296 LLC*, 274 So. 3d 418, 420 (Fla. 1st DCA 2019). *But see John's Pass Seafood Co. v. Weber*, 369 So. 2d 616, 617 (Fla. 2d DCA 1979) (opining that "the validity of an exculpatory provision for any purpose in a residential lease is in serious doubt"). Because they are disfavored, exculpatory clauses "will be strictly construed against the party claiming to be relieved of liability." *Murphy v. Young Men's Christian Ass'n of Lake Wales, Inc.*, 974 So. 2d 565, 567–68 (Fla. 2d DCA 2008).

Plaintiffs argue that the exculpatory clause in their lease agreement is void because section 83.47(1)(a)–(b) of the Florida Statutes invalidates provisions in rental agreements that purport to preclude rights afforded to residential tenants or to waive duties owed by landlords under Chapter 83 of the Florida Statutes or common law. (Doc. 52 at 9–10). Plaintiffs claim that the exculpatory clause purports to waive several landlord duties established in law, including the obligation to maintain the premises in a reasonably safe condition,

---

[3] "A federal court applying state law is bound to adhere to decisions of the state's intermediate appellate courts absent some persuasive indication that the state's highest court would decide the issue otherwise." *Silverberg v. Paine, Webber, Jackson & Curtis, Inc.*, 710 F.2d 678, 690 (11th Cir. 1983).

7

to reasonably inspect the premises, to make necessary repairs before transferring a dwelling unit, and to make reasonable provisions for the clean and safe condition of common areas. (*Id.* (citing § 83.51(2)(a)(3), Fla. Stat.)).

The exculpatory clause is not rendered void by section 83.47(1)(a)–(b). The exculpatory clause here disclaims liability for "fire," "theft," and "other casualty" and from injuries arising from "the use of the [unit]." (Doc. 41-1 at 123). The clause does not appear to contemplate that Good Samaritan could disregard its obligations under section 83.51 to provide for the habitability and maintenance of the physical condition of the premises. Accordingly, Plaintiffs' argument that the exculpatory clause is void must be rejected. *See Casasanta*, 274 So. 3d at 420 (finding that exculpatory clause in residential lease was valid and enforceable).

Although the exculpatory clause is not void, Evangelical Lutheran has not shown that its application entitles it to summary judgment. With the obligation to "strictly construe" the exculpatory clause in mind, the Court finds that Evangelical Lutheran has not shown that this clause waives an action for negligence, which must be "expressed in clear and unequivocal terms." *Sanislo*, 157 So. 3d at 271 (quoting *Univ. Plaza Shopping Ctr., Inc. v. Stewart*, 272 So. 2d 507, 509 (Fla. 1973)). Summary judgment must therefore be denied. *Cf. Brooks v. Paul*, 219 So. 3d 886, 891 (Fla. 4th DCA 2017) (rejecting application of exculpatory clause to bar negligence claim where "the release here could lead

'a person of ordinary intelligence [to] believe that the release could most reasonably be taken merely as driving home the fact that the defendant was not to bear any responsibility for injuries that ordinarily and inevitably would occur, without any fault of the defendant.'" (alteration in original) (quoting *Sanislo*, 157 So. 3d at 271).

### B.    Viability of Plaintiffs' Negligence Claims

Evangelical Lutheran also argues that summary judgment is warranted because Evangelical Lutheran did not owe Plaintiffs a legal duty to protect Plaintiffs from the harm in this case.

Under Florida law, "[t]he duty element of negligence focuses on whether the defendant's conduct foreseeably created a broader 'zone of risk' that poses a general threat of harm to others." *McCain v. Fla. Power Corp.*, 593 So. 2d 500, 502 (Fla. 1992). "Where a defendant's conduct creates a foreseeable zone of risk, the law generally will recognize a duty placed upon defendant either to lessen the risk or see that sufficient precautions are taken to protect others from the harm that the risk poses." *Id.* (quoting *Kaisner v. Kolb*, 543 So. 2d 732, 735 (Fla. 1989)). "[T]he greater the risk of harm to others that is created by a person's chosen activity, the greater the burden or duty to avoid injury to others becomes." *Id.* at 503. Unlike the other elements of negligence, "the question of duty remains one of law for the court." *Johnson v. Wal-Mart Stores E., LP*, 389 So. 3d 705, 712 (Fla. 5th DCA 2024).

9

Premises liability arises with "the failure of a person who is in actual possession and control . . . to use due care to warn or to exclude, licensees and invitees from areas known to the possessor to be dangerous because of operations or activities or conditions." *Worth v. Eugene Gentile Builders*, 697 So. 2d 945, 948 (Fla. 4th DCA 1997) (quoting *Carter v. Livesay Window Co.*, 73 So. 2d 411, 413 (Fla. 1954)); *see also Hancock v. Dep't of Corr.*, 585 So. 2d 1068, 1071 (Fla. 1st DCA 1991) (explaining that landowner owes duty of care to invitees to protect against foreseeable harm from known defective conditions on the premises).

In 2017, Good Samaritan experienced "extreme devastation" from the flooding caused by Hurricane Irma, compounded by the raw sewage unleashed by the failed wastewater treatment facility. (Doc. 53-10 at 2). Following Irma, Evangelical Lutheran continued to use the same wastewater treatment facility, rebuilt the flood-damaged units, and did not disclose the history of flooding at Good Samaritan to new tenants such as Plaintiffs. (*See id.*). As acknowledged in a February 2022 letter to Osceola County officials requesting flooding mitigation assistance, Good Samaritan was aware that the property's location within a floodplain "unceasingly compromises the safety of local residents as another devastating flooding reoccurrence is very likely to take place." (Doc. 53-10 at 2).

Five years after Irma, Hurricane Ian set off a similar chain of misfortune at Good Samaritan. Plaintiffs' negligence claims, which are based on premises-

liability theories, attach at least partly to Evangelical Lutheran's alleged acts of continually building and leasing units in an area with a recent history of severe flooding and in relying on a wastewater treatment facility that had contaminated the floodwater during the region's last major hurricane. Plaintiffs' possessions were destroyed by a combination of the flooding and ensuing contamination. Plaintiffs claim Good Samaritan exposed them to an unreasonable risk of harm as a result of Good Samaritan's construction and operational decisions.

Record evidence exists to support a conclusion that Evangelical Lutheran owed a duty of care to Plaintiffs. Evangelical Lutheran had a duty to Plaintiffs because Plaintiffs were exposed to a foreseeable zone of risk arising from Evangelical Lutheran's activities. *See United States v. Stevens*, 994 So. 2d 1062, 1068 (Fla. 2008). Whether Evangelical Lutheran breached its duty, and whether the harm at issue in this case was caused by Evangelical Lutheran's conduct or was otherwise reasonably foreseeable to Evangelical Lutheran, is an issue for the trier of fact. *See Davis v. Ivey*, 112 So. 264, 271 (Fla. 1927) (determining that "although a rainfall may be more than ordinary, yet if it be such as has occasionally occurred, and it may be at irregular intervals, it is to be foreseen that it will occur again, and it is the duty of those changing or restraining the flow of water to provide against the consequences that will result from it" (quoting *Ohio & M. Ry. Co. v. Ramey*, 28 N.E. 1087, 1088 (1891))); *see also*

11

*Sanders v. ERP Operating Ltd. P'ship*, 157 So. 3d 273, 277 (Fla. 2015) (stating that causation is a jury question). Summary judgment must be denied.

## IV.   CONCLUSION

For the reasons explained above, it is **ORDERED** that the motion for judicial notice (Doc. 43) is **GRANTED**, and the motion for summary judgment (Doc. 42) is **DENIED**.

**DONE** and **ORDERED** in Orlando, Florida, on May 20, 2026.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record

12